# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JESUS SALAS MORALES, | )<br>) |
| Plaintiff, | )<br>) |
| v. | )      1:10CV265<br>) |
| CORRECT CARE SOLUTIONS, LLC, | )<br>)<br>) |
| Defendant(s). | ) |

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This matter comes before the Court on cross-motions for summary judgment filed by the parties. *Pro se* Plaintiff Jesus Salas Morales filed his motion (Docket No. 21) on September 3, 2010, stating, in part, that he "hasn't been able to obtain witnesses affidavits" although he has filed a verified Amended Complaint. Defendant Correct Care Solutions, LLC, filed its summary judgment motion (Docket No. 22) on September 13, 2010, supported by affidavits and medical records (Docket No. 23). The cross-motions are ready for a ruling.

In his Amended Complaint filed August 18, 2010, Plaintiff states that he is an inmate at the Forsyth County Detention Center. (Docket No. 19, Amended Complaint ("Am. Compl.").) He alleges that Defendant Correct Care Solutions, LLC, is the "medical company in charge of 'providing the necessary & proper medical & mental health care treatment' for the inmates." (*Id.* ¶ 4.) Plaintiff alleges that he placed a sick-call request for mental health

care on November 3, 2009. He saw a psychiatrist the next day who told Plaintiff, "'this medical company doesn't treat any of your symptoms.'" Plaintiff alleges that his conditions include severe depression, bipolar disease, and insomnia and anxiety, which a previous care company was treating and which were diagnosed at the John Umpstead mental care facility. Plaintiff says he has placed several more sick-calls regarding his mental disease, but Defendant has refused care to him which "other inmates of non-Hispanic race are receiving . . ." (*Id.* ¶ 6.)

Plaintiff further alleges that he placed a sick-call request on February 2, 2010, to receive treatment for injuries he suffered while trying to get on an upper bunk in his housing unit. He alleges Defendant refused to provide him with proper medical care. (*Id.* ¶ 7.) He also states that on March 27, 2010, he slipped and fell to the floor. A nurse came to assess his injuries. She wrote that he hurt his lower back and left shoulder but Defendant still refused to provide proper care. (*Id*. ¶ 8.) Plaintiff also notes that he has been suffering ear infections but has been refused a referral to an ear specialist. (*Id*. ¶ 9.)

Plaintiff has submitted no evidence, beyond his verified Amended Complaint, in support of his summary judgment motion. Defendant Correct Care Solutions, in moving for summary judgment and responding to Plaintiff's motion, has submitted the affidavits of Sheila Greer, MHP, and Dr. Walter Ezeigbo, along with extensive prison medical records regarding Plaintiff. In her affidavit, Ms. Greer attests that she is a mental health professional with 11 years of experience. Reviewing the records regarding Plaintiff from the detention

center, Ms. Greer observes that Plaintiff was given a mental health screening on June 9, 2008. Plaintiff denied ever having considered suicide; denied ever being treated for mental, emotional or nervous problems; denied taking any medications for mental problems; denied having depression; and was positive toward his immediate future. (Docket No. 23, Attach. 1, Affidavit of Sheila Greer ("Greer Aff.") ¶ 5 & Ex. 1 attached to Aff.) On October 1 and 2, 2009, Plaintiff presented a sick-call request saying that he wanted to see a psychiatrist as his prior medication of Doxipin had been discontinued and he was feeling hopeless. On October 2, he was seen by a nurse who referred him to mental health for an assessment. (Greer Aff. ¶ 6.)

On October 5, 2009, psychiatrist Dr. Stoudmire examined Plaintiff. None of Plaintiff's complaints related to mental health issues. Dr. Stoudmire's findings were that Plaintiff did not suffer from any suicide ideation, had no delusions, no paranoia, and had no other mental health issues that need to be addressed. Dr. Stoudmire told Plaintiff there were no mental health medications that could treat his issues regarding legal and family problems, and that poor sleep/insomnia is not considered a mental health condition. Plaintiff became upset and left the room. (Greer Aff. ¶ 7 & Ex. 2.) Thereafter, on October 5, 2009, Plaintiff told medical technician Hazelwood that he would try to kill himself in order to receive medication. Ms. Greer had Plaintiff placed on suicide watch until he could be further evaluated. (Greer Aff. ¶ 8.) On October 6, 2009, Ms. Greer spoke with Plaintiff. Plaintiff

indicated he had not meant what he said but was mad at the situation. After consultation on the matter, Dr. Stoudmire ordered Plaintiff released to the general population. (*Id*. ¶ 9.)

On October 11 and 12, Plaintiff indicated to Nurse Phillips that he was suffering from anxiety and poor sleep. On October 12, Plaintiff stated that he had been treated for mental health issues six years earlier at the John Umpstead Hospital and had received medication. (*Id*. ¶ 10.) Upon being given this information, Dr. Stoudmire saw and assessed Plaintiff on October 14. Dr. Stoudmire did not diagnose any mental condition requiring medication. (*Id*. ¶ 11.) Dr. Stoudmire asked Ms. Greer to locate any prior medical records relevant to Plaintiff. (*Id*. ¶ 11 & Ex. 3.)

Ms. Greer was able to confirm that Plaintiff had received no mental health treatment or prescriptions within the five years before he was incarcerated. (*Id*. ¶ 11 & Ex. 4.) From and after October 14, 2009, Plaintiff has not requested to be seen by mental health and has not placed any sick calls related to mental health issues. (*Id*. ¶ 12.) On January 22, 2010, Plaintiff was given a yearly mental health screening. He denied ever making suicide attempts and indicated he was not having mental health problems at the time. (*Id*. ¶ 13 & Ex. 5.)

Dr. Walter Ezeigbo has also submitted an affidavit. He attests that he has been licensed to practice medicine since 1996. He has been the medical director at Correct Care Solutions, LLC, during the time Plaintiff has been an inmate at Forsyth. He states that he has personally examined and treated Plaintiff on a number of occasions. (Docket No. 23, Attach. 2, Affidavit of Walter Ezeigbo ("Ezeigbo Aff.") ¶ 3.) In his affidavit, supported by medical

records, Dr. Ezeigbo details the repeated assessments and treatments he afforded to Plaintiff as a result of Plaintiff's complaints of shoulder pain, back pain, and ear pain from February 9, 2010 through July 12, 2010. Dr. Ezeigbo states that Plaintiff has received numerous physical examinations related to [his] complaints, has been prescribed and received a number of medications treating those complaints as needed, has had his hearing tested by an audiology specialist, has received x-rays to his spine, and has received medical care for all of his complaints. The medical records attached to Dr. Ezeigbo's affidavit are consistent with his description of the repeated and continuous care that Plaintiff received. (Ezeigbo's Aff. & Exs. 1-8.)

In his Amended Complaint, Plaintiff has alleged an Eighth Amendment claim of deliberate indifference to his serious medical needs by Defendant. His claim is premised on the Eighth Amendment's proscription against cruel and unusual punishment. "Deliberate indifference" to an inmate's serious medical needs is a violation of the Eight Amendment and is actionable in a §1983 proceeding. *See Estelle v. Gamble*, 429 U.S. 97 (1976), *Price v. Carey*, No. 91-6643, 1992 WL 34208 (4th Cir. 1992). "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990). As further explained in *Price v. Carey*,

> A medical need is "serious" if it is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980), *cert. denied*, 450 U.S. 1041 (1981) (citation omitted). Deliberate indifference may be demonstrated by actual intent or reckless disregard; however, mere negligence or malpractice is insufficient to constitute a violation of the eighth amendment. *Miltier*, 896 F.2d 851-52.

1992 WL 34208, at *3.

On review of the summary judgment record, the Court finds that Plaintiff has provided no evidence that his claim of deliberate indifference rests upon anything more that his disagreement with the diagnosis he received from Defendant's licensed medical providers and with the treatment he received. Nonetheless, it is well established that mere disagreement by an inmate with his physicians is insufficient to make out an Eighth Amendment claim. *See Russell v. Sheffer*, 528 F.2d 318 (4th Cir. 1975). No inference of "deliberate indifference" arises from the Amended Complaint in view of the record of continuous treatment shown by Defendant, which record Plaintiff has not contested.

Accordingly, for reasons set forth above, **IT IS RECOMMENDED** that Plaintiff's motion for summary judgment (Docket No. 21)[1] be denied, that Defendant's motion for summary judgment (Docket No. 22) be granted, and that this action should be dismissed with prejudice.

---

[1] Plaintiff's earlier motion for summary judgment (Docket No. 17) was filed before the filing of the Amended Complaint and is moot.

This the  13th  day of January, 2011.


                                           /s/ P. Trevor Sharp
                                      United States Magistrate Judge